IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GLENN ELLSWORTH and
JACQUELINE ELLSWORTH, H/W,

    Plaintiffs,

    v.

TENDER TOUCH REHAB
SERVICES, LLC; TENDER TOUCH
REHAB PA, LLC; ENHANCE
THERAPIES OPCO, LLC and
ENHANCE THERAPIES, LLC,

    Defendants.

No. 4:25-CV-02149

(Chief Judge Brann)

## MEMORANDUM OPINION

### FEBRUARY 26, 2026

## I.    BACKGROUND

Plaintiffs Glenn Ellsworth ("Mr. Ellsworth") and Jacqueline Ellsworth ("Mrs. Ellsworth") (collectively, "Plaintiffs") sued Defendants Tender Touch Rehab Services, LLC, Tender Touch Rehab PA, LLC, Enhance Therapies Opco, LLC, and Enhance Therapies, LLC (collectively, "Defendants") for negligence and loss of consortium arising out of a fall that Mr. Ellsworth experienced on May 12, 2023 while in the care of Defendants.[1] The suit was originally filed on May 16, 2025, in the Court of Common Pleas of Philadelphia County,[2] but was removed to the United

---

[1]    Doc. 9 (Amend. Compl.).
[2]    Doc. 1-1 (Exhibit A) at 1, 2.

States District Court for the Eastern District of Pennsylvania by Defendants and subsequently transferred to this Court.[3]

Defendants brought the instant motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), asserting the claim is facially barred by the applicable statute of limitations. The motion is now ripe for disposition. For the reasons stated below, it is granted.

## II.     LAW

### A.     Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*,[5] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of

---

[3]     Doc. 1 (Not. of Removal).
[4]     550 U.S. 544 (2007).
[5]     556 U.S. 662 (2009).
[6]     *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

Typically, the statute of limitations should be raised as an affirmative defense; however, "a court may nonetheless dismiss a suit for failing to state a claim when the limitations defense is obvious from the face of the complaint."[8]

### B.      Facts Alleged in the Amended Complaint

The facts alleged in the amended complaint, which this Court must accept as true for the purposes of this motion, are as follows.

Mr. Ellsworth underwent a left patella tendon repair surgery on May 2, 2023, and was afterwards admitted to a skilled nursing facility.[9] Mr. Ellsworth had a post-operative follow up appointment scheduled for May 16, 2023, with his provider.[10] At the skilled nursing facility, Defendants were to provide rehabilitation services related to Mr. Ellsworth's surgery.[11] Plaintiff was a fall risk, requiring two or more people to assist with standing at all times.[12]

Despite this, during a therapy session on May 12, 2023, Defendants' employee made Mr. Ellsworth attempt to stand and ambulate while Defendants'

---

[7]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[8]   *McPherson v. United States*, 392 F. App'x 938, 943 (3d Cir. 2010).
[9]   Doc. 9 at ¶¶ 12-14.
[10]  *Id.* at ¶ 15.
[11]  *Id.* at ¶¶ 16-18.
[12]  *Id.* at ¶ 19.

employee was the only staff member present.[13] As a result, Mr. Ellsworth was "dropped and/or caused to fall down to the ground, resulting in injury to him," including a patella tendon tear/rupture to the recently repaired patella.[14] Three staff members then had to re-seat Mr. Ellsworth with difficulty, moving his post-operative leg in a manner further placing him at risk of injury.[15]

Following these events, Mr. Ellsworth was bedridden and in pain for days.[16] Staff contacted Mr. Ellsworth's provider, and was told that Mr. Ellsworth would be seen at the previously scheduled May 16 appointment.[17] Mr. Ellsworth's provider, through communications with Defendants' staff, instructed Mr. Ellsworth to continue with "weight bearing" rehabilitative therapy.[18] Mr. Ellsworth did not receive x-rays nor was he admitted to the hospital during the days between the fall and the post-operative appointment.[19]

On May 16, 2023, at Mr. Ellsworth's follow-up consultation, he received an x-ray showing a tear of the patella, at which point the extent of his injury was clear.[20] After the injury, Mr. Ellsworth had to go through extensive medical procedures and developed medical complications as a result of the fall.[21]

---

[13]  *Id.* at ¶¶ 20-21.
[14]  *Id.* at ¶ 26.
[15]  *Id.* at ¶¶ 27-28.
[16]  *Id.* at ¶ 30.
[17]  *Id.* at ¶ 32.
[18]  *Id.* at ¶ 33.
[19]  *Id.* at ¶¶ 34-35.
[20]  *Id.* at ¶¶ 39-43.
[21]  *Id.* at ¶¶ 48-56.

Mr. Ellsworth filed his original complaint on May 16, 2025, two years after his follow-up appointment and more significantly two years and four days after his fall.[22]

## C.    Analysis

Pennsylvania proscribes, as applicable here, a two-year statute of limitation for personal injury stemming from "the wrongful act or neglect or unlawful violence or negligence of another."[23] "The two-year statute of limitations generally begins to run 'when an injury is inflicted.'"[24] However, to protect parties who are "reasonably unaware of latent injuries or suffer from injuries of unknown etiology," the Pennsylvania "discovery rule" tolls the applicable statute of limitations until plaintiff discovers, or should have discovered, the injury.[25] "The rule is thus intended 'to ensure that persons who are reasonably unaware of an injury that is *not immediately ascertainable* have essentially the same rights as those who suffer an immediately ascertainable injury.'"[26]

"Under the Pennsylvania discovery rule, the 'commencement of the limitations period is grounded on inquiry notice that is tied to actual or constructive

---

[22] Doc. 1.
[23] 42 Pa.C.S. § 5524(2); *see also Kennedy v. Ethicon, Inc.*, 5:20-cv-00185, 2020 WL 4050459, at *7 (E.D. Pa. July 20, 2020).
[24] *Adams v. Zimmer*, 943 F.3d 159, 163 (3d Cir. 2019) (quoting *Wilson v. El-Daief*, 600 Pa. 161 (2009)).
[25] *Id.*; *Kennedy*, 2020 WL 4050459, at *7.
[26] *Kennedy*, 2020 WL 4050459, at *7 (quoting *Nicolaou v. Martin*, 195 A.3d 880, 892 n.13 (Pa. 2018)) (emphasis added).

knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice to the full extent of the injury, the fact of actual negligence, or precise cause.'"[27] "The statute of limitations accordingly begins to run when the plaintiff knew or, exercising reasonable diligence, should have known (1) he or she was injured and (2) that the injury was caused by another."[28] This is an objective inquiry, and "a plaintiff's actions are examined to determine whether the plaintiff demonstrated 'those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others.'"[29] Moreover, Plaintiffs bear the burden of showing their reasonable diligence.[30]

Typically, the notice and diligence of Plaintiff are for the jury to determine, but where reasonable minds cannot differ in finding that a party "'knew or should have known on the exercise of reasonable diligence of his injury and its cause, … the discovery rule does not apply as a matter of law.'"[31] "'Pennsylvania's formulation of the discovery rule reflects a narrow approach to determining accrual for limitations purposes and places a greater burden upon Pennsylvania plaintiffs vis-á-vis the discovery rule than most other jurisdictions.'"[32]

---

[27]   *Adams*, 943 F.3d at 163 (quoting *Gleason v. Borough of Moosic*, 609 Pa. 353 (Pa. 2011)).
[28]   *Id.*
[29]   *Kennedy*, 2020 WL 4050459, at *8 (quoting *Nicolaou*, 195 A.3d at 893).
[30]   *Adams*, 943 F.3d at 163-64.
[31]   *Adams*, 943 F.3d at 164.
[32]   *Kennedy*, 2020 WL 4050459, at *7 (quoting *Gleason*, 609 Pa. at 362 (2011)).

Here, the facts as pled indicate that Plaintiffs' complaint is facially barred by the statute of limitations. While Plaintiffs argue that Mr. Ellsworth could not have been aware of his injury until May 16, 2023, the Court finds this completely contrary to the pleadings. The amended complaint provides that Mr. Ellsworth was "dropped and/or caused to fall down to the ground," and that he was "bedridden and in pain for days following these events."[33] Plaintiffs argue that Mr. Ellsworth could have believed that the pain was residual from his surgery, but their pleadings imply that his pain began immediately following his fall.[34] Indeed, the pleadings state that Mr. Ellsworth was bedridden in pain following the fall specifically.[35]

The main crux of Plaintiffs' argument is that Mr. Ellsworth did not know the full extent of his injury until May 16, 2023.[36] However, this argument is specifically foreclosed by this Circuit's precedent; the United States Court of Appeals for the

---

[33]  Doc. 9 (Amend. Compl.) at ¶¶ 26, 30. Additionally, in the original verified complaint, Plaintiffs pled that Mr. Ellsworth "felt a tear in his knee." Doc. 1-2 at ¶ 22. Plaintiffs have removed this allegation from the amended complaint, and thus would no longer bound by facts "neither repeated nor otherwise incorporated into the amended complaint," *W. Run Student Hous. Associates, LLC v. Huntington Nat. Bank*, 712 F.3d 165, 171-72 (3d Cir. 2013), but argues in brief that, regardless, "feeling a tear as a layperson is not the same thing as knowing that he had in fact suffered damage." Doc. 30-1 (Br. in Opp.) at 7. While true enough that "feeling a tear" is not the same as knowing a precise medical diagnosis, logically feeling a tear in one's knee which had recently undergone surgery as a result of falling to the floor must put one on inquiry notice of injury. As Plaintiffs have removed this pleading, though, the Court only notes the issue and does not rely on it.

[34]  Doc. 9 at ¶¶ 26, 30.

[35]  *Id.*; *see also* Doc. 30-1 at 10 (" . . . having been continuously bedridden at the skilled nursing facility until [admission to hospital], *from the time of his fall*") (emphasis added).

[36]  Doc. 30-1 at 7 ("feeling a tear as a layperson is not the same thing as knowing he had in fact suffered damage and re-torn something in his knee"); at 8 ("[i]t was at that time on May 16, 023 that Mr. Ellsworth . . . first learned of the existence of *and the true nature* of his injury") (emphasis added).

Third Circuit has reaffirmed that, under the Pennsylvania discovery rule, actual or constructive knowledge of one's harm does not require "'notice to the full extent of the injury, the fact of actual negligence, or precise cause.'"[37]

Based on the pleadings, it is simply untenable to argue that Mr. Ellsworth could not have been aware of the existence of his injury despite being bedridden for days immediately following what seems to have been a devastating fall.[38] This is not the type of "not immediately ascertainable" injury that the discovery rule is meant to protect; rather, it is quite the opposite.[39] It is clear that Mr. Ellsworth would have been aware of some significant harm and that it occurred while being supervised by Defendants' staff member. This is all the discovery rule requires to impose inquiry notice on Mr. Ellsworth that he was injured.[40]

Additionally, Plaintiffs argue that, since Defendants' staff and treating physicians did not automatically send Mr. Ellsworth for imaging, that he could not have known there was injury from the fall.[41] While it is true that "Plaintiffs generally

---

[37] *Adams*, 943 F.3d at 163 (quoting *Gleason*, 15 A.3d at 484).

[38] Moreover, it is true that the Pennsylvania Supreme Court has noted that post-surgical symptoms which can be confused with injuries resulting from tortious conduct may render the discovery tolling rule applicable. *Wilson v. El-Daief*, 600 Pa. 161, 169 (2009). However, Plaintiffs' pleadings do not include any contention that Mr. Ellsworth had been in constant pain after the surgery such that it would be reasonable to conclude the pain was a lingering effect of the surgery rather than obviously related to the fall. Indeed, the pleadings directly imply the opposite, explaining that he had been bedridden with constant pain in the three days between the fall and the follow-up visit. If Plaintiff's complaint had indicated as much, this issue may have come out entirely differently.

[39] *Kennedy*, 2020 WL 4050459, at *7.

[40] *See Adams*, 943 F.3d at 163-64.

[41] Doc. 30-1 at 8.

will not be charged with more medical knowledge than their doctors or health care providers have communicated to them,"[42] this is not the kind of injury where harm would be unknown by Plaintiff until communicated to him by the medical staff. Regardless, it seems that Mr. Ellsworth's medical providers were also concerned about the fall; "[a]fter the fall, Defendants and/or Roseview staff reportedly communicated with Plaintiff's orthopedic surgeon's office" about instructions for care.[43] Moreover, even if neither Plaintiffs nor medical staff were aware of the precise cause of the injury, the fall and subsequent immediate pain still put Mr. Ellsworth on inquiry notice rendering the discovery rule inapplicable here. Mr. Ellsworth has additionally not pled reasonable due diligence, such as indicating that he asked for x-rays or sought at all to uncover the cause of his new pain.[44]

Accordingly, because Plaintiffs' first complaint was filed two years and four days after the injury occurred and the claim began accruing, Defendants' motion to

---

[42]  *Adams*, 943 F.3d at 163.

[43]  Doc. 9 at ¶ 33. While Plaintiffs pled that this delay in sending Mr. Ellsworth for imaging indicates that "no medical personnel, much less a lay person like Plaintiff Glenn Ellsworth, was concerned, much less knew, there was a re-tear, re-injury, or other injury until May 16, 2023," this is manifestly inconsistent with Plaintiffs' pleading that Defendants contacted his provider regarding the fall. Doc. 9 at ¶ 33. Moreover, given that Plaintiff has pled he was bed-ridden with pain following the fall, it does not matter whether he nor medical staff knew precisely the cause of the injury; the fall and subsequent pain suffices to put Mr. Ellsworth on notice. *Cf Gleason v. Borough of Moosic*, 409 Pa. 353, 367 (2011) (where the court held that Plaintiffs were not on constructive notice of injury following the onset of mold-related symptoms "given the disputed and somewhat complex factual scenario"); *see also Duventre v. Home Depot U.S.A.*, N. 2:20-CV-2905, 2021 WL 3745322, at *3 (W.D. Tenn. Aug. 24, 2021) ("[Plaintiff] knew that she had fallen and had hit her knee and that her discomfort had begun immediately after her fall and had continued for a period of weeks.").

[44]  *See Adams*, 943 F.3d at 163-64. It is, after all, Plaintiffs' burden to show reasonable diligence.

dismiss the complaint under Rule 12(b)(6) for being untimely on its face is granted. "The Federal Rules of Civil Procedure do not address the situation in which a deficiency in a complaint could be cured by amendment but leave to amend is not sought."[45]  But the law in the Third Circuit is clear that leave to amend should be "freely given" regardless of whether leave is specifically requested.[46] Therefore, Plaintiffs shall be given leave to amend, should they care to do so.

## III.    CONCLUSION

Defendants' motion to dismiss pursuant to Rule 12(b)(6), Doc. 28, is granted. Plaintiffs are granted leave to amend.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[45]  *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).
[46]  *Id.* (quoting Fed. R. Civ. P. 15(a)).